**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SUSAN JESMER d/b/a
NATIVE TRADING ASSOCIATES,

        Plaintiff,

vs.

                                                            No. 08-CV-631 JCH/WDS

WEST COAST RESOURCES, LLC,
DONALD PACKINGHAM,
DELLA PACKINGHAM, and
DONNA WOODY,

        Defendants.

**MAGISTRATE JUDGE'S PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION[1]**

**THIS MATTER** comes before the United States Magistrate Judge on Defendants' Motion to Dismiss or Stay Proceedings, filed September 2, 2008 [Doc. 14] and on Defendants' Motion for a Protective Order Staying Discovery and Deadlines, filed September 30, 2008 [Doc. 20]. The United States Magistrate Judge, having received an Order of Reference from The Honorable Judith C. Herrera and having considered the arguments of the parties, the record, relevant law, and being otherwise fully advised, recommends that the motion to dismiss be denied and that the motion for protective order be denied as moot. The Court makes the following findings and recommended disposition.

**FACTUAL BACKGROUND**

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

On November 15, 2007, Plaintiff Susan Jesmer d/b/a Native Trading Associates ("Native Trading") commenced an action in the Seventh Judicial District Court of the State of New Mexico in Torrence County ("State Court Action") against Sandia Tobacco Manufacturers, Inc. ("Sandia") and WM Distribution, Inc. ("WM").  At the time, Native Trading manufactured Native brand cigarettes.  Sandia was also a cigarette manufacturer.  WM was a successor distributor to Defendant herein, West Coast Resources LLC ("West Coast") and distributed Native brand cigarettes pursuant to an distribution agreement with Native Trading.

In the State Court Action, Native Trading alleged that Sandia and WM breached their respective contracts to pay Native Trading for a cigarette making machine delivered to Sandia and for cigarettes delivered to WM.  West Coast joined in the State Court Action and asserted claims, as a third-party plaintiff, against Native Trading and seven new parties as third-party defendants. West Coast's Third Party Complaint was filed in conjunction with Sandia and WM's Counterclaim (together "the Counterclaim").  The Counterclaim, in part, asserts claims against Native Trading for breach of contract and fraud relating to the distribution agreements between  Native Trading and West Coast from 2000 to 2006 and between Native Trading and WM from 2006 to 2007.  More specifically, the third-party plaintiffs assert that Native Trading did not charge agreed-upon prices for the cigarettes and did not give agreed-upon credit.   The Counterclaim also alleges that Native Trading breached an alleged exclusive distribution agreement with WM and/or West Coast.  Neither Native Trading's Complaint nor the Counterclaim contain any allegations of trademark infringement.  Native Trading claims that no trial date has been set in the State Court Action; however, Defendants herein suggest that the parties have been ordered to be ready for trial by May 31, 2009.

On July 3, 2008, Native Trading commenced the present federal action, naming as

defendants West Coast and three individuals, namely Donald Packingham, Della Packingham, and Donna Wood ("the Individual Defendants"). In its federal Complaint, Native Trading alleges that West Coast and the Individual Defendants have infringed upon Native Trading's trademarks by using the slogan, "The Original Tobacco Traders" and the words "NTA" and "Native Tobacco Associates," which they claim are confusingly similar to Native Trading's trademarks. Although the Individual Defendants are not presently parties in the State Court Action, Native Trading has filed a motion in that court to amend its Complaint to add both Donald Packingham and Donna Woody as defendants.

## DISCUSSION

Defendants seek dismissal, or in the alternative a stay, of this case under the doctrine of priority jurisdiction. As Judge Browning of this district acknowledged in *Amer. Nat'l Prop. & Casualty Co. v. Wood*, No. CIV 07-1048-JB/RHS, 2008 U.S. Dist. LEXIS 42347, at *24 (D.N.M. Mar. 21, 2008) ("*American*"), "[t]he doctrine of priority jurisdiction is not well developed in New Mexico." *Id.* Indeed, only a handful of New Mexico cases even discuss the doctrine in more than passing fashion. *See, e.g.*, *Cruz v. FTS Constr., Inc.*, 142 P.3d 365 (N.M. Ct. App. 2006) (applying the doctrine and dismissing the second-filed case); *Valdez v. Ballenger*, 581 P.2d 1280 (applying the doctrine and dismissing the second-filed case); *Burroughs v. U.S. Fid. & Guar. Co.*, 397 P.2d 10, 12 (1964) (stating the doctrine but finding no basis for reversal because the doctrine was not jurisdictional and had not been raised below) *overruled on other grounds by Quintana v. Knowles*, 827 P.2d 97, 102 (1992); *State ex rel. Kermac Nuclear Fuels Corp. v. Larrazolo*, 375 P.2d 118, 123-24 (1962) (stating the doctrine but holding that, although the trial court perhaps should have abated the suit, its failure to do so was not grounds for a writ of prohibition). Moreover, the Court is not aware of any case dismissed or stayed by a federal court in this district or by the Tenth Circuit

pursuant to the doctrine of priority jurisdiction.[2]

Generally speaking, the doctrine provides that where two suits over the same controversy are brought in courts of concurrent jurisdiction, the court which acquires jurisdiction first retains it to the exclusion or abatement of the second suit. *Cruz*, 142 P.3d at 368 (citing *Long v. McKinney*, 897 So. 2d 160, 172 (Miss. 2004)); *see also Plant Insulation Co. v. Fibreboard Corp.*, 224 Cal. App. 3d 781, 786-87 (1990) (referring to the doctrine as "the rule of exclusive concurrent jurisdiction"). The elements of the doctrine, articulated in both *Cruz* and *American*, are as follows:

> (1) the two suits must involve the same subject matter or the same cause of action; (2) the two suits must involve the same parties; (3) the first suit must have been filed in a court of competent jurisdiction in the same state, and (4) the rights of the parties must be capable of adjudication in the first-filed action.

*Cruz*, 142 P.3d at 368; *American*, 2008 U.S. Dist. LEXIS 42347, at *24.

Apparently conceding that the State Court Action was filed in a court of competent jurisdiction and that the rights of the parties are capable of adjudication there, Plaintiff limits its arguments to the following: 1) the suits do not involve the same subject matter or cause of action, and 2) the suits do not involve the same parties.

Defendants argue that the present action and the State Court Action involve the same subject matter, even though the present action includes unique claims and legal theories, because the two actions arose out of the same transaction. In contrast, Plaintiff contends that the suits involved

---

[2] Although the doctrine was discussed by Judge Browning in *American*, there he relied on the doctrine in refusing to dismiss the first-filed federal action. American, 2008 U.S. Dist. LEXIS 42347, at *30-35. Additionally, although the Tenth Circuit confronted a similar dilemma in *Life-Link v. Lalla*, 902 F.2d 1493 (10th Cir. 1990), it did not couch the applicable doctrine in terms of the "priority jurisdiction doctrine," nor did it apply the elements that were articulated by the *Cruz* and *American* courts. *Compare id.* at 1495 *with Cruz*, 142 P.3d at 368 *and American*, 2008 U.S. Dist. LEXIS 42347, at *24. Because the parties' devote most of their briefing to the priority jurisdiction doctrine and the elements thereunder, the Court analyzes that doctrine first, followed by an analysis of the *Life-Link* factors. The Court acknowledges that because jurisdiction is premised on federal question, rather than on diversity of citizenship, federal procedural law applies; and federal substantive law also applies, at least with regard to Native Trading's claims not grounded in state law. In the end, though, dismissal is inappropriate under either the analysis used by New Mexico courts or the analysis used by the Tenth Circuit.

4

different subject matter, because the litigation here involves trademark infringement, whereas the state court litigation involves breach of contract. As discussed below, the Court agrees with Defendants that under *Cruz* and *American* a transactional inquiry – as opposed to a claim-based inquiry – is appropriate.

In *American*, an insurer sought a declaratory judgment in federal court concerning policy coverage limits of its insured, the defendant. *American*, 2008 U.S. Dist. LEXIS 42347, at *2. Approximately three months later, the insured filed an action in state court alleging entirely different causes of action, including reformation, breach of contract, insurance bad faith, negligence, and unfair trade and insurance practices. *Id.* at *3. Yet Judge Browning determined that the first prong of the priority jurisdiction analysis was met -- that is, that the actions involved the same subject matter or cause of action. *Id.* at *31.

In *Cruz*, the plaintiff sued defendants in magistrate court on a contract to purchase a newly constructed home. *Cruz*, 142 P.3d at 366. The plaintiff asserted that the defendants had breached the contract because they had failed to finish a block wall and because there were cracks in the house. *Id.* The plaintiff ultimately prevailed, and the defendants appealed, invoking their right to a *de novo* trial in the state district court. *Id.* Nine months later, the plaintiff filed a separate action in a different division of the same district court. *Id.* The new complaint related to the same real estate contract but added new causes of actions and alleged that there were additional problems with the house. *Id.* The district court dismissed the plaintiff's second action against the defendants, pursuant to the doctrine of priority jurisdiction, finding that because the suits arose out of the same transaction, the same subject matter was involved. *Id.* at 369, 372.

In *Cruz,* the New Mexico Court of Appeals rejected the argument that the first-filed action involved different subject matter from the second-filed action merely because the latter action

incorporated new claims and new theories of law. *Id.* at 368. Following the lead of courts of other jurisdictions, the court drew on *res judicata* analysis, reasoning that the two doctrines have the same policy rationale – to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, and to prevent inconsistent decisions – but that priority jurisdiction operates where there is a pending case rather than a final judgment. *Id.* at 368-69 (citing *Plant Insulation Co.*, 274 Cal. Rptr. at 152). More specifically, the Court of Appeals adopted *res judicata*'s transaction standard for priority jurisdiction purposes, noting that the "test for res judicata, which also requires that the two cases involve the 'same cause of action' uses a transactional analysis." *Id.*

Accordingly, it is clear that, at least under New Mexico courts' application of the priority jurisdiction doctrine, differences in legal theory alone do not sufficiently distinguish this action from the previously-filed State Court Action. Rather, the application of the doctrine turns on whether the two actions involve the same transaction. Defendants' position is that the transaction, which they characterize as West Coast's distribution of Native brand cigarettes, is the same in both cases. On the other hand, Plaintiff's position is that two distinct transactions are involved: a distribution agreement in the first action and the alleged use of Native Trading's trademark on invoices in the second. Essentially, the dispute is over how expansively or narrowly this Court should define the transaction(s) between the parties.

Moreover, in conducting its transaction analysis in *Cruz*, the Court of Appeals determined that because both actions related to the defendants' alleged faulty construction of the house, the "operative facts" in the two cases, and therefore the subject matter, were the same. *Cruz*, 142 P.3d at 369. In making this determination, the court discussed *Brooks Trucking Co. v. Bull Rogers, Inc.*, 128 P.3d 1076 (2006) in which the New Mexico Court of Appeals determined that *res judicata* did not bar a subsequent suit where the "operative facts" were different. *Id.* at 369. The Court of

6

Appeals in *Brooks* considered whether the factual and legal issues dispositive of the first suit were different from those in the second suit and, similarly, whether proof in the first suit required the same evidence as proof in the second suit. *Id.* at 1081.

Here, applying the factors considered by the court in *Brooks*, the Court concludes that Defendants' characterization of the relevant transaction is overly broad. First, the factual and legal issues dispositive of the State Court Action are not sufficiently duplicative to warrant dismissal of this action. In fact, the outcome of this action has no bearing on the outcome of the State Court Action. Nor does the outcome of the State Court Action have any bearing on the outcome of this action. Second, the evidence required in Native Trading's trademark claims is, at least for the most part, different from the evidence that would be required in the State Court Action. As Plaintiff puts it, "[t]he Complaint in this case involves not only a different cause of action from the state court claim, but also different facts, different transactions and different evidence." [Doc. 16, at 5.] Put simply, the suits at issue do not involve the same subject matter and the doctrine of priority jurisdiction does not operate.

Because the Court concludes that the two actions do not involve the same subject matter or the same cause of action, it is unnecessary to reach the issue of whether the parties in the two suits are adequately similar. Nevertheless, the Court notes that it is satisfied that the parties in the present suit are in privity with parties in the State Court Action, as they are principals of Sandia, WM, and/or West Coast. *See American*, 2008 U.S. Dist. LEXIS 42347, at *31 (noting that "New Mexico courts have recognized that parties may be treated as the "same" under the doctrine of priority jurisdiction if they are in privity with one another); *Cruz*, 142 P.3d at 369-70 (determining that the newly added individual defendants were in privity with the original corporate defendant where they were officers and/or employees). Moreover, it appears that two of the three parties may ultimately

become named parties in the State Court Action, as a Motion for Leave to Amend Complaint and to Add New Parties is pending there, which seeks to add as defendants Donald Packingham and Donna Woody. [Doc. 21, Ex. A.]

Even if the elements of priority jurisdiction as articulated in *Cruz* and *American* were met, Tenth Circuit case law counsels against dismissal of this action. In *Life-Link Int'l v. Lalla*, 902 F.2d 1493 (10th Cir. 1990), the Tenth Circuit analyzed the related, if not substantially identical, doctrine of exclusive concurrent jurisdiction. There, the court recognized that the circumstances permitting the dismissal of a federal suit based on the presence of a concurrent state proceeding are extremely limited. Relying on the United States Supreme Court's language in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), the Tenth Circuit considered "whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice . . . to justify the surrender of . . . jurisdiction . . . with the balance heavily weighted in favor of the exercise of jurisdiction." *Life-Link*, 902 F.2d at 1495 (internal quotations omitted). The court enumerated a number of factors in assessing the propriety of the trial court's dismissal of the federal action, including which court first assumed jurisdiction over any property, the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, the order in which concurrent jurisdiction was obtained, the adequacy of the state court proceedings to protect the parties' rights, whether issues of federal law are presented, and whether the attempt to invoke federal jurisdiction was done in bad faith. Id. at 1495-96. The court found that no factor clearly warranted dismissal, while several favored retention. Id. at 1496. Accordingly, the court advised that the district court should accept jurisdiction of the remanded action. *Id.*

Defendants give little precedential weight to the relevant portions of the court's discussion in *Life-Link*, arguing that it constitutes dictum, because the court's holding was that it was error to

8

dismiss the action solely on the ground of waiver.  "Dicta are 'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.'"  *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995) (quoting Black's Law Dictionary 454 (6th ed. 1990)).  In this Court's view, consideration of whether the trial court lacked jurisdiction over the federal action based on pending state court proceedings was essential to the courts' decision to remand the case for further proceedings.  In any event, the factors enumerated by the court in *Life-Link*, all of which were derived from Supreme Court case law, are at least instructive.

Here, several *Life-Link* factors weigh against dismissal of this action.  First, issues of federal law are presented in this action, including three claims of alleged violations of the Lanham Act.  Second, there is no evidence that Native Trading has invoked federal jurisdiction in bad faith.

On the other hand, several factors may also favor dismissal, albeit only slightly.  First, the state court was the first to exercise jurisdiction.  However, as the Tenth Circuit noted in *Life-Link*, "priority should not be measured exclusively by which complaint was first filed, but rather in terms of how much progress has been made in the two actions."  *Life-Link*, 902 F.2d at 1496.  Here, the parties have not presented evidence related to what progress, if any, has been made toward trial in the State Court Action.  Although Defendants claim that the parties have been ordered to be ready for trial by May 31, 2009, Plaintiff claims that no trial date has yet been established.  Further, it is noteworthy that, like here, the state court action in *Life-Link* was also filed first; yet the Tenth Circuit there concluded that "no factor clearly warrant[ed] dismissal" of the federal action.  Second, West Coast, and presumably its records and some of its witnesses, are located in Torrance County, the location of the State Court Action.  However, there is no evidence that the federal forum is inconvenient for anyone involved, especially given the relatively close proximity of Torrance

County to this Court and the presence of parties' counsel in Albuquerque. Further, the rule of exclusive concurrent jurisdiction "is established and enforced not 'so much to protect the rights of the parties as to the protect the rights of the courts to co-ordinate jurisdiction to avoid conflict of jurisdiction, confusion and delay in the administration of justice.'" *Plant Insulation*, 274 Cal. Rptr. at 150.

The remaining factors are a wash. First, there is no evidence that either court has jurisdiction over any property. Second, with regard to the adequacy of state court proceedings to protect the parties' rights, Plaintiff argues that state courts' relative inexperience with trademark claims, coupled with its extreme caseloads, serves as an additional basis for denying Defendants' motion. Defendants counter by suggesting that the relative number of reported cases demonstrates that state courts are not inexperienced compared to federal courts in handling issues of trademark infringement. In this regard, the Court acknowledges that state courts are more than competent to handle trademark disputes, but simply notes that the presence of claims arising under federal law is a "major consideration weighing against [dismissal]." *Life-Link*, 902 F.2d at 1496. Further, while Native Trading's trademark infringement claims could have been tried as part of the State Court Action, it simply cannot be said that the operative facts in this action are so intertwined with the operative facts in State Court Action that they would best be adjudicated there.

Finally, any concern over avoiding piecemeal or duplicative litigation is undermined by the distinct transactions in the present action (alleged use of Native Trading's trademark on invoices) and the State Court Action (West Coast's distribution of Native brand cigarettes), as well as the distinct evidence essential to prove the parties' respective claims. Thus, on balance, the factors do not warrant dismissal, particularly given the Supreme Court's admonishment that "[o]nly the clearest of justifications will warrant dismissal" of a federal action. *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976).

In sum, based on the transaction analysis employed by the courts in *Cruz* and *Brooks*, the factors enumerated in *Life-Link*, and the "balance heavily weighted" against dismissal, the Court concludes that neither dismissal nor stay of this action in favor of the pending State Court Action is warranted.

Defendants' Motion for Protective Order Staying Discovery Deadlines seeks a stay of all discovery and deadlines in this case until the Court rules on Defendants' Motion to Dismiss or Stay Proceedings. Because the motion to dismiss is resolved herein, the motion for protective order is rendered moot.

## RECOMMENDED DISPOSITION

The Court recommends that Defendants' Motion to Dismiss or Stay Proceedings, filed September 2, 2008 [Doc. 14], be DENIED and that Defendants' Motion for a Protective Order Staying Discovery and Deadlines, filed September 30, 2008 [Doc. 20], be DENIED as moot.

_____
W. DANIEL SCHNEIDER
United States Magistrate Judge
